[No. 14669. Department One. July 16, 1918.]

EDWARD J. SANDERS, *Respondent,* v. HENRY L. PINNEY et al., *Appellants.*[1]

LOGS AND LOGGING—TIMBER CONTRACT—COVENANTS TO PUT IN POSSESSION—BREACH. Upon a sale of timber purchased from and standing on the land of another, with covenant that the vendee may go on the land to cut and remove the timber without let or hinderance, the vendor is bound to put the vendee in possession and is liable for damages for failure to do so, upon demand, when the owner of the land refused to allow the vendee to enter.

EVIDENCE—EXPERT OPINION—QUALIFICATIONS OF WITNESS. An expert as to the cost of logging and market value of logs is not disqualified because he had never been on the land, where he answered properly framed hypothetical questions based upon the proof.

APPEAL—REVIEW—HARMLESS ERROR. Error cannot be predicated upon the exclusion of evidence where the witness was later permitted to testify.

[1]Reported in 174 Pac. 471.

LOGS AND LOGGING—CONTRACT—ACTION FOR BREACH—INSTRUCTIONS. Under an entire contract for the sale of timber upon two tracts of land, involving large expense in the construction of skid roads to remove any timber from either tract, it is proper to instruct that the whole contract is violated by failure to put the vendee in possession of a substantial part.

SAME—CONTRACT—BREACH—MEASURE OF DAMAGES. The measure of damages through failure to put a vendee in possession of land to cut and remove the timber purchased is the difference between the reasonable value of the merchantable timber sold and the cost of the cutting and placing it on the market, plus the amount agreed to be paid.

APPEAL—REVIEW—HARMLESS ERROR. Error cannot be predicated upon giving an instruction where appellant had requested a similar one.

APPEAL—REVIEW—VERDICT—EXCESSIVENESS. A verdict for damages for breach of a contract for the sale of standing timber is not excessive, where there was evidence that the vendee's net profits were in excess of the verdict rendered.

Appeal from a judgment of the superior court for King county, Brawley, J., entered May 11, 1917, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Chas. D. Fullen* and *J. M. Hawthorne,* for appellants.

*Charles W. Johnson* and *Ellis Lewis Garretson,* for respondent.

MITCHELL, J.—George Sheffield and wife owned and resided on forty acres of land, partly timbered, on Vashon Island, abutting on salt water, while back of and adjoining it were ten acres of timber land owned by appellants, Henry L. Pinney and wife. By a written conveyance, Sheffield and wife, as parties of the first part, conveyed to Henry L. Pinney, party of the second part, the timber on the forty-acre tract, except the fir on five acres, in consideration of $200, to be paid at the rate of $1 per thousand as the timber was removed, it being understood that this tract, as well

as the other one adjoining it, were to be shortly logged by the same person. The conveyance from Sheffield and wife to Pinney, among other things, says:

"It is understood that the party of the second part is about to enter into a contract to sell this timber and the timber standing on the adjoining land, at the rate of $1 per M. and so far as feasible the said party of the second part agrees to have the logging operations begun on the adjoining land; and out of the sales of said timber to advance to the parties of the first part towards the purchase price herein mentioned, money so received so that there will always be a margin of security for the said parties of the first part in the timber standing on the above described land while there is any unpaid balance due to them on this contract of sale, and the party of the second part shall have power to go upon said land and cut and remove the timber therefrom without let or hindrance."

The conveyance was duly acknowledged on March 15, 1916, and recorded in the auditor's office on October 16, 1916. The timber was to be removed on or before March 1, 1917. By a written contract for the purpose of logging, dated May 23, 1916, Pinney, as party of the first part, sold and conveyed to E. J. Sanders, respondent, party of the second part, in consideration of $1 per thousand for timber cut, to be paid as the logs were sold, all the timber on the ten-acre tract, and also the forty-acre tract (except the fir on five acres); and in this contract, immediately following the description of the real property, are these words:

"and the party of the second part shall have power to go upon said land and cut and remove timber therefrom without let or hindrance."

This contract provided for removal of the timber on or before March 1, 1917. About the date of this last contract, Sanders, upon completing the logging of a tract nearby, put his men on the Pinney ten-acre

tract, and, after cutting approximately 100,000 feet, was arranging to extend his operations onto the Sheffield tract, when he was informed by Sheffield that he could not enter and cut timber on his tract. The two tracts are conditioned topographically so that the timber on the ten-acre tract is not accessible to the water for transportation except over the Sheffield tract. Notwithstanding Sheffield's warnings, Sanders sent his men to the forty-acre tract in June, 1916, to prepare it for logging, whereupon Sheffield refused to let them enter to remove any of the timber. Sanders then applied, without avail, to Pinney to put him in possession. This action followed, Sanders claiming damages in the sum of $1,800, as follows: (1) Loss of profits, $1,000; (2) reasonable value of work in felling timber on the ten-acre tract, $300; and (3) loss of equipment and business by being forced out of business, $500. In answer to the complaint, Pinney and wife were content with general denials. There was a jury trial, during which the court eliminated all of plaintiff's demands except the one for loss of profits. The verdict was $1,000 for Sanders. Pinney and wife made, at the proper time, a motion for judgment notwithstanding the verdict, which was denied. There was a motion for new trial on all the statutory grounds, and it was denied in every particular. Pinney and wife appeal.

Appellants insist that, by the two instruments, Sheffield to them, thence to respondent, the standing timber became personal property segregated from the fee, the title passed carrying the right of possession and removal, which, if denied respondent by Sheffield, imposed no liability upon appellants. We are not persuaded by this argument. Sheffield's contract is an executory one, the timber to be paid for as logged, and under which no one was put in possession for the purpose of removing the timber, and yet appellants, by

the very terms of their contract with respondent, covenanted that he "shall have power to go upon said land and cut and remove the timber therefrom without let or hindrance." Language like this is not necessary to provide against hostility of the vendor, but it relates to all others. Besides, the proof shows Sheffield never objected to the removal across his tract of the timber cut on the other, which latter, according to the Sheffield contract, was to be sold and the stumpage price thereon paid to Sheffield as additional or marginal security for the stumpage price of the Sheffield timber. He only objected to the timber being removed from his tract until he had been paid. Appellants so understood the attitude of Sheffield, and after respondent had several interviews with Mr. Pinney and followed his instructions to get permission to remove timber, without success, Mr. Pinney said to respondent, "I haven't anything to do." And, as a fact, he did nothing. While it appears that respondent was told Sheffield had given a timber contract, he was never advised of its terms, and it was not placed of record until long after he had quit operations. Such failure of appellants to put respondent in possession of the timber was a breach of the contract, carrying liability. Whoever contracts that one may go upon land of another, occupied by that other, and cut and remove timber therefrom "without let or hindrance," thereby agrees to give possession, and not merely to give a chance of a lawsuit.

At the trial, respondent used a witness, who qualified as an expert, to testify as to the cost of logging and the market price of logs, which is alleged as error because the witness was never at the scene or place of logging involved in this case, a contention without merit, because the witness answered hypothetical questions properly framed and based on facts and condi-

tions of the scene of the operation already in proof, and, besides, appellants later on used a witness similarly circumstanced in the same manner and for the same purpose.

Again, it is charged as error that the court refused to permit a qualified witness, who had examined the locus offered by appellants, to speak as to the cost of logging and the market value of logs. True, the court did at first because of the form of the questions, but later the same witness did clearly testify as to both.

Appellants find fault with an instruction given the jury to the effect that, if another kept respondent from going on the land to cut timber, claiming there was no right to do so, and appellants were informed thereof, it would be the duty of appellants, under the contract with respondent, to put respondent in possession for the purpose of removing the timber within the time provided, and that appellants would not be relieved if denial of possession related to less than the whole, if it was substantial. The instruction was right, considering the situation. The contract as to both parcels was an entire one, and to move any of the timber required the expenditure of such large sums and the use of so much timber for construction of skid roads that respondent had the right to treat the whole contract as violated upon failure to get possession of so large a part of the timbered land. As to respondent, the contract was not apportionable; certain necessary overhead expenses would be prohibitive if confined to the removal of a small portion of the timber, but otherwise if used to move all of it. By implication, appellants, in their pleading, confess this view, because, in answering, they do not seek anything for stumpage on account of the timber cut on their ten acres, but rest solely on general denials.

The court gave the jury an instruction as follows:

"You are instructed that, if you should find in favor of the plaintiff in this action, the measure of damages which must govern your verdict would be as follows: The plaintiff would be entitled to receive such a sum in money as would represent the difference between the reasonable market value of the merchantable timber sold and conveyed under said contract and the cost of cutting, transporting and placing the same upon the market when added to the amount or sum which the plaintiff agreed to pay the defendant for said timber. By 'reasonable market value' is meant that sum which said timber would bring, when manufactured into merchantable timber, upon the open market, that is, when sold by an owner of the same who is willing but not compelled to sell the same, to a buyer who is able, ready and willing to buy such timber but not compelled or under any necessity of buying the same."

It is claimed that such instruction was erroneous as to the measure of damages and the definition of market value. As to the first, in addition to its being correct, it is to be observed that appellants requested the court to give an instruction in harmony with it as follows:

"If you find from the evidence that the plaintiff, Sanders, could not have made any profit out of the transaction in question, then Sanders has not been damaged and in that event your verdict must be for the defendants,"

which, of course, was in effect given by the court, considering the whole of the instructions. As to the other, definition of reasonable market value, the court used an approved and proper form.

Again, it is contended the verdict is excessive, and that, indeed, no damage was shown. True, there was evidence to sustain such view, but there is a dispute, and the inquiry here is to see if there is proper and substantial evidence to uphold the verdict. We find there is. There is proof to show there were at least

700,000 feet of timber on the two tracts; the expense of logging, $5 per thousand; stumpage, $1 per thousand; and $200 for roads and landings, making a total cost of $4,400, while the market value was $8 per thousand, equaling $5,600 for the timber, thus showing a profit of $1,200, while the verdict was $1,000.

What has already been said shows the trial court was right in denying the motion for judgment *non obstante*.

Judgment affirmed.

MAIN, C. J., FULLERTON, TOLMAN, and PARKER, JJ., concur.